OLD RIVER CO. v. BARBER. (No. 356.)

(Court of Civil Appeals of Texas. Beaumont. March 10, 1919. Rehearing Denied April 2, 1919.)

1. APPEAL AND ERROR ⬅719(8) — ASSIGNMENT OF ERROR—NECESSITY—VERDICT—NEGLIGENCE.

A verdict of negligence against one on whom no legal duty rested to use care may be attacked on appeal in absence of assignment of error.

2. WATERS AND WATER COURSES ⬅116—SURFACE WATER.

In Texas the common-law rule obtains that, surface water being considered a common enemy, any owner of land has the right to protect himself against it and to do anything upon his own premises with that end in view, so long as what he does amounts to no more than a due exercise of dominion over his own premises.

3. HUSBAND AND WIFE ⬅276(6)—COMMUNITY PROPERTY—CONVEYANCE BY SURVIVOR—RIGHTS OF HEIRS.

Where, after death of wife, husband granted right of way for canal purposes to rice irrigation company over community tract, the company leasing other parts of the community tract for rice raising, and the company constructed the canal and paid each year the rent for leased land to the husband as long as he lived, and he paid to each of the children of himself and his deceased wife their proportionate share of such rent, and the children, knowing of the conveyance and lease, made no objection thereto, they were as fully bound by the conveyance of the right of way as if they had properly signed and acknowledged it.

4. WATERS AND WATER COURSES ⬅118—REPELLING SURFACE WATER—OWNER OF CANAL RIGHT OF WAY.

Company owning rice irrigation canal right of way was protected by the common-law immunity of a fee-simple owner from liability for damages in repelling surface water, and would be liable for obstructing the natural flow of surface water only if it did something in the construction or operation of its canal that amounted to an undue exercise of dominion.

5. WATERS AND WATER COURSES ⬅118—SURFACE WATERS — OBSTRUCTION — IRRIGATION CANAL.

Where grant to rice irrigation canal company of right of way for canal did not require the company to construct drains or openings in its canal, its operation of the canal without doing so did not render it liable for damages for surface water impeded and backed upon the premises of another by the canal embankment; nor would the company be liable because it failed to cut its canal to allow escape of such surface water after being requested to do so by such land owner.

Appeal from District Court, Chambers County; J. Llewellyn, Judge.

Suit by Ollie Barber against the Old River Company. From judgment for plaintiff, defendant appeals. Reversed and rendered.

Stevens & Stevens, of Houston, and A. W. Marshall, of Anahuac, for appellant.

E. B. Pickett, Jr., of Liberty, for appellee.

HIGHTOWER, C. J. The statement of the nature and result of this suit, as made by appellant, Old River Company, as far as it goes, is substantially correct, and will be adopted by us, with such additional statement as we deem necessary to a clear understanding of the issues in the case.

This suit was instituted in the district court of Chambers county by Ollie Barber, as plaintiff, against the Old River Company, a canal irrigation company, as defendant; the plaintiff alleging that the defendant, without the consent or permission of the plaintiff or his wife, who was the owner in fee simple of 119.4 acres of land described in the petition, constructed a canal upon plaintiff's said premises, and that said canal was negligently constructed and negligently maintained, and caused surface water to be backed upon plaintiff's premises as aforesaid, and prevented such water from escaping from plaintiff's premises, by reason of which various kinds of vegetables and some field crops growing upon said premises, as well as domestic fowls owned by plaintiff, were damaged and destroyed, to the extent in the aggregate of $610, that plaintiff and his family suffered further damages in the sum of $2,500 by reason of the fact that plaintiff and his family were compelled to move from their home on said premises, and remain away for a period of 15 days, for the reason that said premises were rendered practically uninhabitable, being made very muddy and unclean, and the surroundings caused to be very disagreeable and unpleasant, and that plaintiff and his said family were greatly dis-

turbed and distressed and suffered inconvenience and annoyance, to their further actual damage in the sum of $2,500.

Appellee not only alleged that his wife owned the tract of land on which their said home was located, and that the canal complained of had been built thereon without the consent or permission of appellee or his wife, but also alleged that, if plaintiff's wife did not own said entire tract in fee simple, then she owned all of said 110.4 acres except an undivided one-half interest in and to that part of said tract which was included within or occupied by the canal which defendant had constructed on said tract, and was then operating, and that defendant, in exercising whatever right of possession it had to said land, did not, in the construction and operation of said canal, limit itself to the exercise of a due and proper dominion of its rights as a cotenant upon said land, but built and maintained said canal in total disregard of the rights of appellee, without reference to the damage which such maintenance and operation was causing appellee, and which could and should have been prevented had said defendant limited itself to exercising only a due and proper dominion of whatever right of possession it had in and to said tract of land; that in the construction and maintenance of said canal defendant was unreasonably disregardful of the rights of appellee, and negligent, in this, that said canal is about 125 by 150 feet wide, and the north bank thereof is 2½ or 3 feet high, and 7 or 8 feet wide at its base, and that such embankment obstructs the water as it would naturally flow from plaintiff's land, but the defendant in building said embankment negligently failed to provide proper drain boxes or openings therein to sufficiently protect plaintiff's said tract of land, and that such embankment is wholly without the sufficient drain boxes needed to accommodate the flow of surface water that naturally drains in that direction, but that, by the use of reasonable diligence, the defendant could and should have built in said embankment drain boxes sufficient to allow the water that accumulated on plaintiff's land to flow therefrom, as it would naturally do but for such embankment; that defendant was further negligent in operating said canal in this, that, when plaintiff's said home and farm premises became flooded, plaintiff promptly made known to defendant the disagreeable and damaging situation in which he and his family and property were placed by reason of said overflow, and further, that defendant then knew that plaintiff's crops were being materially damaged by said overflow, and of the extreme discomfort, inconvenience, and hardship which plaintiff and his family were then enduring, and that plaintiff at that time appealed to the defendant to permit him to make an opening in the north levy of said canal of sufficient size and depth to relieve plaintiff's said premises of the overflow which had accumulated thereon, and from that overflow and the damage that was caused by same plaintiff would have been saved if defendant had allowed him to cut the opening he requested to cut in said canal, or that, if defendant had complied with his request and itself cut in said canal proper and sufficient openings for the escape of the water which had accumulated on plaintiff's said premises, the defendant could in that manner, by the use of proper and reasonable diligence, have saved and prevented plaintiff from any material damage, but that the defendant refused and declined to do so, and that the result was that plaintiff suffered serious and material damage, fully specified in his petition.

In addition to his prayer for damages, plaintiff also prayed to recover title and possession of so much of that portion of the tract of land described as is occupied by defendant's canal.

The defendant answered by a plea of not guilty and general denial, and, by way of plea of confession and avoidance, alleged that at the time of the injury complained of it owned the right of way over the premises described in plaintiff's petition, and that it had a right to construct said canal upon said premises, having an easement over said property which it acquired by purchase from the owners of same at and before the construction of said canal, and after the construction of same. Defendant further alleged that on March 29, 1902, for valuable consideration, which consideration was that it would lease a large tract of land and cultivate the same in rice and pay $2.50 per acre for rent, that it acquired from Joe Fisher, the then owner of the premises described in the plaintiff's petition, a right of way 150 feet in width over the same, and defendant alleged that it acquired said right of way described in plaintiff's petition from the said Joe Fisher, who owned a one-half undivided interest, and who was the survivor of the community estate of himself and his then deceased wife. Defendant further alleged that said Joe Fisher had the management, care, and control of the property described in plaintiff's petition, and he conveyed the same to defendant, in that the same consisted of the community estate of the said Joe Fisher and his said wife, deceased, and that it was necessary for him, in order to manage the same for the purpose of producing an income, to make the conveyance of said right of way to, in, and upon said premises to defendant for the reason that said lands were chiefly valuable for the production of rice, and that rice could not have been successfully grown upon said premises without adequate irrigation, and that hence, in order to properly irrigate said lands, it was necessary to grant a right of way to defendant, or some other

canal company, in order to distribute water upon said premises. It was further alleged that, in pursuance of said purpose, to develop said lands for rice, so as to produce an income from the same for the benefit of those entitled thereto, the said Joe Fisher, on March 20, 1905, in pursuance of said agreement, leased said lands, including the land claimed by the plaintiff, to the defendant for a period of ――― years at $2.50 per acre, and that the defendant, by virtue of said lease, took possession of the premises thereby conveyed, and farmed the same in rice, and paid annually for the years 1905 to 1909, inclusive, to the said Joe Fisher, the sum of, to wit, $1,600, and to the plaintiffs annually for each of said years the sum of $193.72, with the exception of the year 1909, when $105.18 was paid to plaintiff as rental for said lands. It was further alleged that the plaintiffs, in accepting said sums of money as rental for said land upon which said canal was so constructed, were estopped from contending that defendant had no right to construct, maintain, and operate said canal; that plaintiffs, at the time they accepted said rents, well knew that said canal had been constructed in the manner that it was constructed; that plaintiffs, by their acts, have acquiesced in a partition of the premises in controversy, in so far as the right of way upon which said canal is located is concerned, in that the plaintiffs agreed to the operation of said canal, to its construction and maintenance; that, if plaintiffs were ever tenants in common with defendant, they, by accepting the benefits of the operation of said canal for the irrigation of rice upon their lands, and in accepting rent from defendant for the cultivation of said lands, were estopped from asserting that defendant was not properly exercising its dominion over that portion of the premises occupied and covered and used by said canal.

The case was tried with a jury, and submitted upon special issues, and upon the verdict returned a judgment in the sum of $848 was rendered in favor of the plaintiff against defendant Old River Company, from which judgment it has duly perfected an appeal.

There are several assignments of error in appellant's brief, some of which we shall specifically mention later on, but at this point we shall make a statement of the undisputed material facts, as we gather them from this record, and from which our legal conclusions will follow.

Joe Fisher and his wife, whose maiden name does not appear from the record, owned in community approximately 1,000 acres of land known as the William Hodge survey in Chambers county. Mrs. Fisher died some time in the year 1901, leaving surviving her her said husband, Joe Fisher, and a number of their children, eight or ten, one of whom was Nina Fisher, who in 1904 became the wife of the appellee, Ollie Barber. It does not appear from the record that there was any administration had upon the estate left by Mrs. Fisher, or that any necessity existed therefor. After the death of Mrs. Fisher, and on March 29, 1902, the said Joe Fisher made and executed and delivered to appellant the following written instrument:

"The State of Texas, County of Chambers.

"Know all men by these presents that I, Joseph Fisher, of Chambers county, Texas, for and in consideration of one dollar ($1.00) to me in hand paid by Old River Rice Irrigation Company, a corporation under and by virtue of the laws of the state of Texas, and other valuable considerations, hereinafter stated, do hereby grant, sell and convey, and by these presents do grant, bargain, sell and convey, unto the said Old River Rice Irrigation Company, the right of way for constructing canals and laterals over the hereinafter described tract of land, being situated in Chambers county, Texas, and described as follows: [Here follows a description of the land, of which the premises in controversy are a part.]

"The said canal shall not exceed 150 feet in width, and shall be constructed by said company in such place and in such manner as may seem proper and most advantageous to said company, hereby granting to said company the right of ingress and egress to and over said land for the purpose of constructing and repairing said canal and laterals, and the said company may take and use the necessary earth from said land for constructing and repairing said canal and laterals, and may erect such pumping machinery as may be necessary on said land.

"The said Joseph Fisher further agrees to lease to the said company the land heretofore described [meaning the whole survey], and this shall be deemed a full and sufficient lease from the said Fisher to said company to authorize the said company to improve and plant said lands in crops of rice or other crops, at the option of said company. The said company shall utilize all the land heretofore described suitable for the purpose of raising rice or such other crops as may be raised by said company that the said canal is capable of furnishing water for, and the same shall be utilized by the said company within three years from the date hereof, and that the said Joe Fisher hereby reserves the right to terminate this lease at any time after the expiration of two years from the time of harvesting the first crop by selling the said land, or by cultivating the same for the purpose of raising rice, but in such event the same shall in no wise injure or prejudice the rights of the lessee who may have a growing crop on said lands, and full time shall be given to the said lessee to harvest and take care of any crop he may have on said land, and in the case of the termination of said lease without sale the said Fisher agrees to cultivate the said land for the purpose of raising rice, and to take all water from the company's canal, and to pay a reasonable water rent therefor.

"The said company shall erect and keep in repair all necessary fences and buildings for the protection of all crops raised by them on said land so leased, and shall have the right to remove all improvements from said land at the expiration of said lease. The said company

shall pay to the said Joseph Fisher the sum of $2.50 per acre per annum for all land upon which the said company or their lessees shall produce crops.

"The said company shall build and complete the canal as fast as practicable to meet the demands of the farmers engaged in raising rice, and generally to meet the rice interests in the vicinity where said canal shall be built.

"Should the company fail to put the said canal into actual operation on or before the 1st of April, A. D. 1904, then and in that event the lease hereby given may be terminated and become null and void, at the option of the lessor.

"The construction of said canal and materials across the aforesaid lands shall be considered a full compensation for the right of way over the same, and upon completion thereof the title of said right of way is fully vested in said company and their assigns forever.

"The rent that may become due for the land leased as aforesaid shall commence when the first crop is planted, and shall become due when the same shall be harvested and marketed.

"All oil and mineral rights are reserved to the aforesaid land to said Fisher.

"Witness our hand this 29th day of March, A. D. 1902. [Signed] J. Fisher, T. W. Shearer, President, Old River Rice Irrigation Company."

On March 20, 1905, Joe Fisher made and executed and delivered to appellant the following instrument in writing:

"The State of Texas, County of Chambers.

"This agreement, made the 20th day of March, A. D. 1905, between Joseph Fisher, of the first part, and the Old River Rice Irrigation Company, a corporation chartered and existing under and by virtue of the laws of Texas, party of the second part, witnesseth: That the said party of the first part, for and in consideration of the yearly rents and covenants hereinafter mentioned and reserved on the part and behalf of the second party, its successors and assigns, to be kept and performed, hath demised, let, and leased, and by these presents doth demise, let, and lease, unto the said party of the second part, its successors and assigns, all that certain tract of land in Chambers county, Texas, a part of the Chambers county school and the Wm. H. Hodges surveys, bounded and described as follows, to wit: All of the Wm. H. Hodges survey owned by Joseph Fisher east of said company's land and also all that part of said Hodges survey west of the east prong of said canal and south of the north prong, and east of the Shearer lateral and north of the Chambers county school land; also all the Chambers county school land belonging to said Fisher south of the land above described which is inclosed within said Fisher's pasture fence. The amount of said land is to be determined by a survey hereafter to be made.

"To have and to hold the same unto the said party of the second part, its successors and assigns, from the 1st day of January, 1905, for and during the term of three years thence next ensuing and fully to be completed and ended, the said party of the second part yielding and paying for the same unto the party of the first part, his heirs and asigns, the yearly ,rent or sum of two dollars and fifty cents per acre for each and every acre of land cultivated in rice by second party. The same to be paid on or before the 1st day of January of each year after a crop of rice is made and harvested, and it is further stipulated by and between the parties hereto that at the expiration of said time the said party of the second part, its successors and assigns, shall and will quietly and peaceably surrender and yield up the said demised premises unto the* said party of the first part, his heirs and assigns. It is further agreed by and between the parties hereto that the said second party shall at any time during the terms of this lease have the right to move off any or all of the improvements, machinery, or other fixtures placed by said party on said land, and shall have 60 days after the expiration of said lease to move off all improvements, machinery, and fixtures of every description from said land that may be on said land at the expiration of said lease.

"In witness whereof the said parties have hereunto set their hands the day and year aforesaid.

    "[Signed]      Joe Fisher.
              "Old River Rice Irr. Company,
                 "T. W. Shearer, Pres."

Appellant, acting under the authority given it under the first instrument, as above set out, constructed and completed its canal across that portion of the Hodge survey which is now claimed by Mrs. Barber, the wife of appellee, and ever since the construction and completion of said canal appellant has operated the same in accordance with the terms of its written contract, and each year paid to Joe Fisher, as long as he lived, the rental that was due by appellant for such portions of said estate as was cultivated in rice by appellant. The community estate of Joe Fisher and his deceased wife was not partitioned or divided as between him and said children until 1910, but in that year there was a legal decree of partition, by which 119.4 acres fell to Mrs. Barber, wife of the appellee, which tract constitutes the premises in controversy in this suit. Appellee, however, two years before such partition in 1908, moved upon that portion of the undivided estate which now constitutes said 119.4-acre tract, and commenced to improve a home there, and built a dwelling house, barns, outhouses, and planted an orchard, and commenced and continued to farm such premises until the year 1914. At the time appellee moved, with his wife, upon the premises in controversy, appellant's canal was in full operation, and had been for several years, with the full knowledge and acquiescence, and, we might add, with the full consent, of appellee and his wife, which continued until the date' of the damage of which appellee complains in this suit. During all the years that appellant was cultivating the lands owned by Joe Fisher and children of his deceased wife, as tenants in common, it paid, according to its contract, to Joe Fisher, as long as he lived, the rental value thereof, and Joe Fisher paid to each child, including appellee's wife, its proportionate share thereof.

It appears from the record, practically without dispute, that the children of Joe Fisher and his deceased wife, including the wife of appellee and appellee himself, while they did not join in the execution of either of the written instruments executed by Joe Fisher to appellant hereinabove copied, at the same time they were aware that their father, Joe Fisher, had authorized appellant to construct its canal over said lands, and had leased to appellant said lands to be cultivated in rice for the rentals above mentioned, and none of said children interposed any objection to the action of their said father in granting said right of way to appellant, or in leasing said lands to it, and, in fact, none of said children, including the appellee, had any objection to the action of their said father in granting said right of way to appellant, or in leasing to it said lands for cultivation, as was done. There is no contention that appellant failed to live up to its agreement in any respect, either in the construction and operation of said canal, or in respect to the cultivation and use of said lands, or in the payment of rental therefor. In other words, all of said children of Joe Fisher and wife, not only knew of what their father, Joe Fisher, had done with reference to authorizing appellant to construct its canal over the common estate, and not only knew of the contract of lease of said lands made by him to appellant, but they had no objection thereto, and this record shows that all of them fully acquiesced in everything that Joe Fisher did, both as to granting the right of way for the canal and as to leasing the lands to appellant for cultivation in rice. When the partition of the common estate was had between Joe Fisher and his said children in 1910, it appears from the record that appellant was in no manner a party to that proceeding, and, so far as we are able to tell, no recognition was taken of appellant or its canal in that proceeding.

After the partition proceeding was had and the 119.4 acres above mentioned fell to appellee's wife, appellant did not cultivate any portion of that tract any further, and, so far as the record shows, appellant had no further dealings or connection in any way with appellee or his wife.

Appellant's canal crosses appellee's 119.4 acres of land near the south end thereof, as the same was afterwards laid out, and that portion of the tract actually occupied by the canal is about 7 acres, but the larger portion of appellee's premises lies north of the canal. The natural drainage on appellee's land is from north to south, or practically so, and surface water naturally finds its way from appellee's premises southward in the direction of appellant's canal, and escapes in that direction. On the 28th day of May, 1914, there was a heavy rainfall in that vicinity, and the north bank of appellant's canal prevented the escape of water which fell during this rain and caused the same to back up on appellee's premises and flood the same, and such premises remained practically flooded during a period of approximately 15 days. The extent of the overflow of his premises was such that he was compelled to move his family away from home, and keep them away a period of approximately 15 days. Much of the garden vegetables and field crop was destroyed by such flood, and to the extent and value as found and itemized by the jury in this case, and in deference to the verdict of the jury, we find that the evidence was sufficient to warrant the amount found in appellee's favor because of inconvenience, annoyance, discomfiture, etc., to appellee and his family. In other words, we find that on account of the overflow of appellee's premises, which was in consequence of surface water being prevented from escaping by reason of the presence of appellant's canal, appellee was damaged in the amount as found by the jury in this case.

As stated above, the case was submitted to the jury upon special issues, and in answer to these issues the jury found: That appellant, in the construction and operation of its canal, failed to provide proper drain boxes or other openings in the embankment thereof to drain from appellee's land the surface water which accumulated thereon; that appellant was guilty of negligence in failing to provide such drain boxes or other openings; that appellee requested appellant to cut a sufficient opening in the embankment of the canal to allow surface water which had accumulated on appellee's premises to escape; that appellant was guilty of negligence in failing to cut such opening in said embankment, after being requested by appellee so to do.

Appellant's second assignment of error challenges the action of the trial court in refusing to peremptorily instruct the jury in its favor, the assignment being:

"The undisputed evidence having shown that the defendants, in the rightful exercise of dominion over its own property, constructed a canal over a right of way upon land owned by the defendant company, and maintained said canal, and that, if any water was obstructed, or caused to be backed upon the plaintiffs' property, that the same was surface water, and the defendant cannot be held liable under the law for any damage which may have arisen by reason of the backing of such surface water, therefore the court erred in overruling defendant's motion to instruct a verdict in its behalf, and the court further erred in not instructing the jury to return a verdict for the defendant."

The proposition under this assignment is as follows:

"The land upon which the canal in this case was located having been conveyed to the defendant company by Joe Fisher, the survivor of the community estate of himself and his deceased

wife, out of a larger tract of land owned by said estate, and it having been shown that the children of the said Joe Fisher, deceased, and his deceased wife, who were the sole heirs to said estate, had acquiesced as tenants in common in the ownership and occupancy of said land conveyed by said canal, the said acquiescence of said heirs, including the wife of the plaintiff, amounted in law to a partition by estoppel; hence the undisputed evidence in this case shows that the defendant, in operating said canal, was in the rightful exercise of dominion over its own property.

We have hereinbefore stated what we conceive to be, from the record, the undisputed facts upon which the judgment in this case was awarded, and it only remains to determine whether upon such facts the judgment of the trial court can be sustained as a legal proposition.

It is true the court submitted to the jury whether or not appellant was guilty of negligence in the construction and operation of its canal, and also whether or not appellant was guilty of negligence in refusing to cut its canal embankment after being requested to do so by appellee at a time when appellant knew that if it refused to do so appellee would be damaged, and the jury found that appellant was guilty of negligence in both respects. It is also true, as contended by appellee, that there is no assignment of record made by appellant challenging such finding of negligence by the jury. But it does not follow, as contended by appellee, that in the absence of complaint on appellant's part of such finding by the jury, appellant would be bound thereby, and that the judgment as to damages must necessarily follow and be sustained.

[1] Negligence, as a law term, presupposes a breach of duty owed by a party sought to be charged with such negligence to the party claiming injury therefrom. If there was really no legal duty resting upon appellant to the appellee in this case, there was no negligence on the part of appellant towards appellee in contemplation of law, and appellant would not be bound by the verdict of the jury, even though there be no assignment by appellant here challenging that verdict.

The counter proposition made by appellee to that of appellant is as follows:

"A tenant in common may ordinarily make use of jointly owned property as he pleases, but that right he must not misuse or abuse to the injury of another cotenant, and a tenant in common who is guilty of negligence in his use of common property, is liable for the damage which proximately results to another cotenant from such negligence."

We shall not undertake to determine here whether the relation between appellant and appellee's wife was that of tenants in common in all respects, or to determine just what relation appellant and appellee and his wife sustain to each other under the facts in this case, because we do not deem it necessary to determine just what that relation was.

If, however, we should be of the opinion that such relation was that of tenants in common in the legal acceptation of that term, we are not yet prepared to agree with appellee's counter proposition to the extent of holding that a tenant in common who may be guilty of any act of negligence in his use of common property, as distinguished from a willful wrong or trespass, would be liable for all damage which might proximately result to a cotenant from such mere negligence. No authority has been cited by appellee which supports the counter proposition thus broadly made. The only Texas case that he cites that could in the least be construed as authority for such proposition is that of Gillum v. Railway Co., 5 Tex. Civ. App. 338, 23 S. W. 718. As we read that case, it does not go to the extent contended for by appellee in this connection, but it was decided in that case that a tenant in common has a right to sell marketable timber growing on the common property, so long as he does not commit waste, and, further, that the purchaser from such tenant in common takes a good title as against the other cotenants; their remedy being to compel the seller to account for the proceeds. So, if it should be held that appellant was a tenant in common, under the undisputed facts in this case, we doubt whether it would follow that it would be guilty of actionable negligence towards appellee because of the manner in which it constructed or maintained its canal or because of its refusal to cut the canal at the request of appellee.

There is no question in this case but what the damage suffered by appellee was caused by surface water in every sense of that term. In other words, there is no difficulty in this case in determining the character of water that caused the injury complained of.

[2] At common law surface water was considered a common enemy, and any owner of land had a right to protect himself against such water and to do anything upon his own premises with that end in view, so long as what he did amounted to no more than a due exercise of dominion over his own premises. This rule is not disputed by appellee; neither is it disputed by him that such rule obtains in this state. That such was the rule at common law and is the rule in this state, see Barnett v. Matagorda Rice Co., 98 Tex. 355, 83 S. W. 801, 107 Am. St. Rep. 636; Wilbourne v. Terry, 161 S. W. 33; Walenta v. Wolter, 186 S. W. 873.

While admitting the common-law rule as to surface water and its application in this state, yet it is the contention of appellee, in substance, that such rule of protection against surface water could only be invoked by one whose ownership of land was abso-

lute. In other words, appellee contends that nothing short of a fee-simple title in land, under the common-law rule, affords the possessor thereof immunity where he causes damages to another by obstructing the natural flow of surface water.

[3, 4] We admit that we have not been cited by counsel for either side in this case to any authority bearing directly upon the very facts of this case; neither have we been able to find any such authority. But, under the undisputed facts in this case, as we have stated them, it is our opinion that appellee and his wife were and are as fully bound by what Joe Fisher did in granting to appellant the right of way for the canal in question as if they themselves had properly signed and acknowledged both the written instruments executed by Joe Fisher to appellant, as hereinbefore copied; and if we be correct in this conclusion, it unquestionably must follow that appellant was in the rightful exercise of dominion over the land constituting the right of way of said canal, and that, unless appellant did something in the construction or operation of said canal that amounted to an undue exercise of dominion, then we see no reason, in common sense or logic, why appellant could be liable to appellee in this case.

[5] True, appellee contends that, if appellant failed to construct sufficient drainage under its canal to permit the escape of surface water from his premises, and if such failure was negligence in the opinion of the jury, or if the failure on the part of appellant to cut said canal after being requested by appellee to do so amounted to negligence in the opinion of the jury, then it follows that appellant's exercise of dominion over its canal was not a due exercise of dominion by it, and that consequently appellant would not be protected by the common-law rule as to surface water, which only gave protection where the exercise of dominion by the owner was a due exercise.

We have given this contention careful consideration, and we are unable to agree with it. We believe that, appellant in this case having in effect a grant by all the interested parties for the right of way of its canal, and the right to operate that canal for purposes of irrigation, so long as it exercised that right for that purpose, as was contemplated by the parties granting that right, and since it was not provided in such grant that appellant should construct drains or openings in its canal, appellant was under no legal duty to do so, and that its operation of its canal without doing so could not be held to be an undue exercise of its dominion over its right of way.

For all practical purposes, it occurs to me that appellant is just as much the owner of the land covered by its right of way granted by Joe Fisher and, as we say, his children, and that its right of dominion thereover is just as complete as if it was the owner thereof by fee-simple title, and that so long as it operates said canal for canal purposes only, as was intended by the parties, it cannot in law be held responsible to the parties making that grant merely because of surface water being impeded and backed upon the premises of another.

Appellee has cited many cases wherein railroads were involved because of the failure to construct culverts, drains, etc., as required by statute, but such authorities can have no application here, whether they emanate from this or other states.

It being our opinion that the undisputed facts in this case show no legal liability against appellant in favor of appellee, it follows that the judgment of the trial court should be reversed, and here rendered in favor of appellant; and it will be so ordered.