### TUCKER et al. v. IMPERIAL OIL & DEVELOPMENT CO. et al. (No. 9645.)

(Court of Civil Appeals of Texas. Fort Worth. May 28, 1921.)

**1. Husband and wife ⬉276(2)—Surviving husband's authorization to manage community property as administrator cannot be collaterally attacked on ground of defective bond.**

In suit by children against their father, as administrator of community property, to set aside an oil and gas lease made by him as such administrator, they could not claim that the county court was without jurisdiction to make the order authorizing him, as surviving spouse, to control, manage, and dispose of the community estate by reason of the fact that the bond given by him was conditioned merely that he "shall well and truly perform all the duties required under said appointment," instead of the condition required by Vernon's Sayles' Ann. Civ. St. 1914, art. 3598; for the quoted condition was a substantial compliance with the statute, and, in any event, in view of article 3602, the order could not be collaterally attacked because of a defect in the bond, that being a mere irregularity.

**2. Courts ⬉36—Presumption of jurisdiction attaches to judgments of county court.**

The county court being a court of general jurisdiction in probate matters, the same presumptions will be indulged to support its judgments as against collateral attacks as will be indulged to support the judgment of any other court.

**3. Husband and wife ⬉276(6)—Surviving husband's authorization to control and dispose of community estate authorized his oil and gas lease.**

The authority granted a surviving husband to control, manage, and dispose of the entire

community estate of himself and his deceased wife included the right to make an oil and gas lease, whether the right conveyed thereby was a vested interest in the title or an option to acquire such an interest by complying with the terms of the lease.

**4. Appeal and error ⊂⊃1011(1)—Conflicts in the evidence are for the trial court.**

A conflict in the evidence is within the province of the trial court to determine.

**5. Appeal and appear ⊂⊃500(1), 1071(6)— No error shown in failure to file findings and conclusions; record must show that request for finding was presented to court.**

No error was shown in respect of the trial court's failure to file findings of fact and conclusions of law, in compliance with appellant's motion therefor, where, although such motion appeared in the transcript and also the fact that it was filed on the last day of the term of court during which the judgment was rendered, it was not shown by bill of exceptions or otherwise that the request for such findings was ever brought to the attention of the trial judge, and, furthermore, from the record, containing a full statement of facts agreed to by the parties, it did not appear that appellants had been injured by reason of such failure on the part of the trial judge.

Appeal from District Court, Stephens County; G. O. Bateman, Judge.

Suit by Jasper Tucker and others against the Imperial Oil & Development Company and others. From judgment for defendants, plaintiffs appeal. Affirmed.

Mackey & Ritchey, of Breckenridge, for appellants.

Shepherd & Kelly, of Eastland, for appellees.

DUNKLIN, J. A tract of 161 acres of land situated in Stephens county was the community property of W. D. Tucker and his wife, Jennie Tucker, who died intestate on October 15, 1906. After her death, and on February 18, 1907, W. D. Tucker filed a petition in the county court of Stephens county, in which county he resided, and in which county Mrs. Jennie Tucker died, praying for the appointment of appraisers to appraise the community estate of the petitioner and his deceased wife, coupled with a prayer that the petitioner be appointed community administrator of said estate. On the same day three appraisers were appointed by the judge of said court, two of whom, together with the petitioner, filed in the county court an inventory and appraisement of the community property of the petitioner and his deceased wife, and also a list of claims belonging to said estate, all duly verified in accordance with the statutes. The inventory and appraisement listed the tract of land above mentioned as belonging to said community estate. On the same day the petitioner also filed a community administrator's bond and oath, but the bond was in the sum of $750 only, which was the value at which the tract of land above mentioned was appraised. The inventory and appraisement also included the personal property appraised at $140, and claims due the estate in the sum of $175. On the same day the county judge, in vacation, made an order which was entered on the minutes of the court reading as follows:

"On this the 18th day of February, A. D. 1907, came on to be considered the report of the inventory, appraisement, and list of claims of the community estate of Jennie Tucker, deceased, and surviving husband, W. D. Tucker, made by J. B. Lucius and J. J. Day, who have heretofore been appointed by the court to appraise said community estate, and, the court having examined the same, it is ordered by the court that said report be, and it is hereby, in all respects approved, and the same, together with this order, is ordered recorded upon the minutes of this court, and the said W. D. Tucker, as the survivor of said community estate, is hereby authorized to control, manage, and dispose of said community estate in accordance with the provisions of the Revised Statutes of this state."

On March 25, 1918, W. D. Tucker, acting for himself and as survivor of the community estate of himself and his deceased wife, Jennie Tucker, executed to J. A. Thurman what is commonly known as an oil and gas lease upon the tract of land above mentioned, the lease being also signed by Mrs. May Tucker, a second wife of W. D. Tucker. The lease stipulated that it was to run for a period of five years from its date and as much longer as either oil or gas shall be produced from the land in paying quantities. The lease recited a cash consideration paid of $905, and contained the further stipulation that, if operations for the drilling of a well were not commenced on the land on or before March 25, 1919, then the lease should terminate, unless the lessee should on or before the date pay or tender to the lessor the sum of $161, which should operate as a rental for 12 months from and after that date and continue the lease in force during that period, and that by the payment of a like sum for each year the lease could be continued in force for the full period of 5 years from its date without the commencement of drilling operations. The lease also bound the lessee to pay certain royalties in the event oil or gas should be found in paying quantities, and it also contained a stipulation making it assignable in whole or in part, and giving the assignee of any particular portion the right to continue the lease in force as to his portion by complying with the terms of the lease so far as applicable to his particular part. Thereafter J. H. Thurman, the original lessee, assigned one-fourth of the lease, and

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the portion so assigned was again assigned to different persons.

At the time W. D. Tucker executed the lease there were no valid community debts existing against the community estate of himself and his former wife, Jennie Tucker.

At her death Mrs. Jennie Tucker left surviving her six children, namely, Jasper, Lizzie, Eva, Della, Ervin and Ernest. Thereafter Eva married Roy Segrest, and after her marriage departed this life intestate and childless. The rest of the children, joined by Roy Segrest, instituted this suit against W. D. Tucker and the original lessee, J. H. Thurman, and his assignee and subsequent assignees, to cancel the lease executed by W. D. Tucker, mentioned above; the two daughters, Lizzie and Della, being also joined by their respective husbands, and Ernest Tucker, a minor, suing by Jasper Tucker, as next friend.

Upon the trial of the case, before the court without a jury, judgment was rendered denying to the plaintiffs the right to cancel the lease, but awarding to the minor plaintiff a personal judgment against his father, W. D. Tucker, for the sum of $80 as his proportionate part of the rentals collected on the lease. From that judgment all the plaintiffs have prosecuted this appeal.

Upon the trial it was agreed that all the rentals provided for in the lease had been paid in accordance with its terms, and, according to the testimony of W. D. Tucker, Jasper Tucker, one of the plaintiffs, requested him to execute the lease; that he executed it for a fair price paid therefor, and after executing it he divided the proceeds thereof among all the plaintiffs except the minor plaintiff, Ernest Tucker, to whom he is ready to pay over his proportionate part; that he executed the lease in good faith, believing at the time that he had authority to do so, and that his act in so doing was for the best interest of the estate.

The bond filed by W. D. Tucker reads as follows:

"Know all men by these presents that we, W. D. Tucker, as principal, and J. B. Lucius and S. W. Lauderale, as sureties, are held and firmly bound unto the county judge of Stephens county, and his successors in office in the sum of seven hundred and fifty dollars, conditioned that the above bound W. D. Tucker who has been appointed community administrator by the county court of said county of the estate of Jennie Tucker, deceased, shall well and truly perform all the duties required under said appointment.　　　　　W. D. Tucker.
　　　　　　　"J. B. Lucius.
　　　　　　　"S. W. Lauderale.
"Approved the 18th day of Feb. 1907.
　　　"A. J. Powers, County Judge,
　　　　　　　"Stephens County."

Article 3598, V. S. Tex. Civ. Statutes, relating to the administration of community property by the surviving spouse, reads as follows:

"The surviving husband shall, at the same time he returns the inventory, appraisement and list of claims, present to the court his bond with two or more good and sufficient sureties, payable to and to be approved by the county judge, in a sum equal to the whole of the value of such community estate as shown by the appraisement, conditioned that he will faithfully administer such community estate, and pay over one-half the surplus thereof after the payment of the debts, with which the whole of such property is properly chargeable, to such person or persons as shall be entitled to receive the same."

[1] One of the contentions made by appellants in their pleadings, and by different assignments of error, stated briefly, is that the county judge was without jurisdiction to make the order authorizing W. D. Tucker, as surviving husband, to control, manage, and dispose of the community estate of himself and his deceased wife, by reason of the fact that the bond given by him was not in the terms required by the statute just quoted, the condition of the bond being that W. D. Tucker "shall well and truly perform all the duties required under said appointment," while the condition of such a bond, as required by the statute, is that the survivor "will faithfully administer such community estate, and pay over one-half the surplus thereof after the payment of the debts with which the whole of such property is properly chargeable, to such person or persons as shall be entitled to receive the same." In other words, it is insisted that the bond given was not a substantial compliance with the provisions of that article of the statutes, and that a compliance with this provision was a necessary requirement to confer jurisdiction upon the county judge to enter an order authorizing the survivor to control, manage, and dispose of the community property.

[2] It will be noted that this is a collateral attack upon the order of the county court mentioned. The county court being a court of general jurisdiction in probate matters, the same presumptions will be indulged to support its judgments as against collateral attacks as will be indulged to support the judgment of any other court. Waterman Lumber & Supply Co. v. Robbins (Com. App.) 206 S. W. 825; Alexander v. Barton, 71 S. W. 71; Martin v. Robinson, 67 Tex. 368, 3 S. W. 550.

In the case of Jordan's Ex'rs v. Imthurn, 51 Tex. 276, it was held that the giving of a bond by a community survivor in a sum far less than the value of the community property did not render void a deed of trust on land subsequently executed by the survivor, acting as administrator of the community estate, and that that objection was not avail-

able on a collateral attack made upon the proceedings. The court used the following language:

"It was an irregularity to have taken a bond for an amount less than the appraised value of the property, but, in our opinion, not sufficient, under the circumstances, to have rendered the proceedings void. The giving of the bond by the surviving husband and its approval by the clerk, was in the nature of a judicial proceeding, which should not be held void on a collateral attack. It seems to have been given and accepted in good faith; to have been acted upon and acquiesced in by all parties interested; and no direct proceedings taken to avoid it and have a new or additional one given."

In Linskie v. Kerr, 34 S. W. 765, it was held that the fact that one surety instead of two had signed the administrator's bond did not render the order of the court predicated thereon void and subject to collateral attack. See, also, Townsend v. Willis, 78 Fed. 850, 24 C. C. A. 369.

We are of the opinion further that the bond above mentioned was in substantial compliance with the statutory requirements, and that the liability of the bondsmen was none the less by reason of the fact that the bond was not in the exact language of the statute quoted. Furthermore, article 3602, V. S. Tex. Civ. Statutes, relating to administration of community estates, reads as follows:

"Any person interested in such community estate may cause a new appraisement to be made of the same, or a new bond may be required of the survivor for the same causes and in like manner as provided in other administrations."

We believe that the enactment of that statute, of itself, implies an intention on the part of the Legislature that a former appraisement or bond which was not in compliance with statutory requirements should not, for that reason, render former proceedings void; in other words, the enactment of that statute seems to imply that a defective bond or appraisement should be treated as an irregularity capable of being cured by a new appraisement or bond. If the Legislature had understood or intended that a defective bond would render the proceedings void for want of jurisdiction, it could hardly be supposed that the statute would have been enacted permitting the amendment of the bond, without requiring, at the same time, the filing of a new petition, a new appraisement, and the entering of a new order of the court authorizing the surviving spouse to control, manage, and dispose of the property, as was done originally. For other authorities showing, in a general way, the presumptions indulged to support the legality of the transactions by the survivor of the community estate, acting under appointment by the probate court, see opinion by this court in Tholl v. Speer, in cause No. 9536, 230 S. W. 453, not yet [officially] published, and other decisions there cited.

[3] The lease in controversy conveyed valuable property rights that belonged to the community estate, and the authority granted by the court to W. D. Tucker to control, manage, and dispose of the entire estate, included the power to dispose of that property right, whether that interest was a vested interest in the title or an option to acquire such an interest by complying with the terms of the lease. The contention made by appellants that the removal of oil and gas from the land would be to commit waste, and that W. D. Tucker, who is the owner of an undivided one half interest in the property, would not be authorized to grant to another the right to commit waste as against the title to the remaining half of the property, which was vested in the plaintiffs, is predicated upon the erroneous assumption that the authority to execute such a lease was not included in the power granted to the survivor to control, manage, and dispose of the community estate.

[4] As noted, W. D. Tucker testified that all of the plaintiffs except his minor son, Ernest, shared the funds paid to him as a consideration for the lease, and that one of the plaintiffs, Jasper Tucker, had advised him to make the lease. That testimony would support a finding that the plaintiffs who had thus participated in the proceeds had thereby waived their right to a cancellation of the lease, at all events. The fact that that testimony of W. D. Tucker was controverted by testimony of some of the plaintiffs would tend only to create a conflict in the evidence, which it was within the province of the trial court to determine. Old River Co. v. Barber, 210 S. W. 758; Barkley v. Stone, 195 S. W. 925.

[5] Error also has been assigned to the failure of the court to file findings of fact and conclusions of law, in compliance with appellants' motion therefor. We find such a motion in the transcript, and that it was filed on the last day of the term of court during which the judgment was rendered, but it is not shown by bill of exception or otherwise that the request for such findings was ever brought to the attention of the trial judge. Furthermore, the record before us contains a full statement of facts agreed to by the parties, and it does not appear that appellants have been injured by reason of such failure on the part of the trial judge. Kemp v. Everett, 59 Tex. Civ. App. 399, 126 S. W. 897; Boyette v. Glass, 140 S. W. 819; Dunlap v. Broyles, 141 S. W. 289; Demetri v. McCoy, 145 S. W. 293.

For the reasons indicated, the judgment of the trial court is affirmed.