### EVIE LEE GRAHAM AND HUSBAND v. T. K. MILLER ET AL.

#### Decided March 7, 1901.

**1.—Survivor in Community—Exchange of Property—Liability of Sureties.**

In an action by an heir on the bond of a survivor in community to recover her interest in certain community real estate disposed of by such survivor, it was not a defense to plaintiff's claim that such survivor had exchanged the community property for other real property which was stilll on hand, where the values of the respective properties were not shown, and the exchange included other property also, and the legal title to the property received in exchange vested in such survivor and his wife by a later marriage, and was incumbered with her homestead claim, although plaintiff might, if it became necessary, charge such latter property with a trust.

**2.—Same—Ratification.**

Where a duly qualified survivor in community had sold a parcel of the community land, and the purchaser thereof, after the heir of the deceased spouse had attained her majority, procured from her a quitclaim deed of the property in ratification of the sale, this afforded no defense to the sureties on such survivor's bond against the heir's claim for the value of her interest in the property so sold.

Appeal from Hill. Tried below before Hon. William Poindexter, Special Judge.

*Vaughn & Works,* for appellants.

*T. S. Smith, W. E. Spell* and *Nelson Phillips,* for appellees.

GARRETT, CHIEF JUSTICE.—Evie Lee Graham, joined by her husband, brought this suit in the District Court of Hill County against the appellees, T. K. Miller and R. B. Brown, as the sureties upon the bond of G. W. Martin as administrator of the community estate of himself and his deceased wife, the mother of the plaintiff. The community estate consisted of two parcels of real estate situated in the town of Itasca, in Hill County, to wit, lots 7 and 8, block 11, and the dwelling house situated thereon, and lot 11, block 8, and the storehouse situated thereon. The wife died intestate July 31, 1886, when the plaintiff was 11 years of age. On January 6, 1890, Martin applied to the County Court of Hill County for the appointment of appraisers of the community estate of himself and his deceased wife. Appraisers were appointed, and

an inventory and appraisement of the above mentioned property was filed in the court on January 9, 1890, and on the same day Martin filed his oath and bond as required by law, which, as well as the inventory and appraisement, were approved by the court. The bond is for the sum of $1000, and appellees are the sureties thereon. Lots 7 and 8, block 11, was appraised at $600, and lot 11, block 8, at $400.

On April 4, 1891, Martin sold lot 11 in block 8 and the improvements thereon to W. H. Massey for the sum of $400, which was paid to him. On July 17, 1893, Martin sold lots 7 and 8 in block 11 and the improvements thereon, together with lot 9 and a part of lot 10 in the same block, to F. B. Manor for a consideration of $3000, as recited in his deed, but the real consideration for the property was the conveyance by Manor to Martin of a tract of four acres of land in Files Valley, in Hill County, known as the Files Valley property. Martin married again, and at the time of the conveyance of the homestead to Manor, was living thereon with his second wife, who joined him in the execution of the deed. He moved to the Files Valley place and resided upon and occupied it as a homestead with his family until his death, which occurred March 30, 1896. Martin died insolvent, without ever having settled with or paid to the plaintiff any part of her mother's share of the community estate, and there has never been any administration upon his estate. His second wife survived him. On October 22, 1895, at the request of Massey and with the approval of her father, the plaintiff, joined by her husband, executed to Massey a quitclaim deed for the lot bought by him. This deed recited a consideration of $5.

The case was submitted to a jury with instructions that if the sale from Martin to Manor was in exchange of property conveyed by the latter to him, to find for the plaintiff nothing on account of the lots 7 and 8 in block 11; and that if the plaintiff, with the knowledge that her father had conveyed the lot 11 in block 8 to Massey and had received the consideration therefor, executed the deed to Massey with the purpose to ratify the deed of her father, to find for the defendants on account of that lot, although the jury should believe that plaintiff at the time was ignorant of the existence of the community bond. A general verdict was returned in favor of the defendant, and judgment was rendered in accordance therewith.

By appropriate assignments of error the questions above indicated by the charge of the court are presented for revision. Upon the execution of the bond the sureties became bound for the performance of the principal of the condition that he would faithfully administer the community estate and pay over one-half of the surplus thereof, after the payment of the debts with which the whole was chargeable, to the persons entitled to receive the same. Rev. Stats., art. 2225. If the property had remained on hand, and had not been disposed of by the survivor at his death, or when called to account, no liability for its value could have arisen; or if the plaintiff had received property from her father's estate, its value would be counted in set-off to any liability for a failure to pay

over her share of the community estate. But upon the filing of the inventory and appraisement and the execution of the bond the right of the survivor to control and dispose of the property belonging to the community estate becomes absolute, and the bond takes the place of the property, as far as the rights of the heirs of the deceased partner are concerned. Watkins v. Hall, 57 Texas, 1; Brown v. Seaman, 65 Texas, 628; Huppman v. Schmidt, 65 Texas, 583. In order to relieve the sureties of liability on account of property remaining on hand, or inherited by the heir, it must be shown that the heir received the property. Yancy v. Batte, 48 Texas, 58; Carter v. Williams, 2 Wills. Con. Cas., sec. 500.

The contention of the defendants with respect to lots 7 and 8, block 11, is that they were given in exchange for the Files Valley property which remains on hand in the place of it. But there are several elements of uncertainty about this property which prevent its being accepted in the place of the lots exchanger for it. It may not be of equal value; the property exchanged for it included also other lots the separate property of Martin; and by the conveyance thereof the legal title became the community property of Martin and his second wife and at his death the whole of it was affected by her homestead claim. It is perhaps true that a trust might be ingrafted in the Files Valley property in favor of the plaintiff to the extent of her interest in the lots conveyed in consideration therefor, as indicated in Worst v. Sgitovich, 46 Southwestern Reporter, 72, but a suit would probably be necessary to establish such trust. Incumbered and involved as this property is, the plaintiff can not be required to accept it in the place of the lots that belonged to the community which were exchanged for it, although she might, if necessary to protect herself from loss, have a trust declared in it for her benefit.

The plaintiff was not estopped by her ratification of the sale made by her father to Massey from claiming her share of the proceeds thereof. She had no interest in the lot after its sale to Massey. Martin's deed conveyed the absolute title, whether she approved the sale or not, and her approval of the sale could give it no further validity than it had before. She might ratify and approve the conveyance and be of the opinion that the property brought a very good price, and still not release or relinquish her right to have her father account to her for her share of the proceeds. There was no error in allowing the plaintiff to testify that she had never had a settlement with her father, as complained of in the cross-assignment. The character of the evidence probable comes within the decisions cited, but the statute does not apply. Defendants are not sued as the heirs or legal representatives of Martin.

For the errors indicated, the judgment of the court below will be reversed and the cause remanded.

*Reversed and remanded.*