## MOREMAN et al. v. ROBERSON et al.

### No. 4291.

Court of Civil Appeals of Texas. Amarillo.

Nov. 5, 1934.

Rehearing Denied Nov. 26, 1934.

Vickers, Cambell & Evans, of Lubbock, for appellants.

Robt. A. Sowder and Wilson, Randal & Kilpatrick, all of Lubbock, for appellees.

JACKSON, Justice.

Lucy Moreman died April 5, 1928, leaving her husband, who, on June 14th thereafter, qualified as survivor to administer their community property, with B. W. Moreman, B. F. Cope, and Mrs. B. F. Cope as sureties on his bond.

The inventory, appraisement, and list of claims shows that such estate consisted of personal property valued at $11,250 and separate town lots and 160 acres of land valued at $19,900. All of the lots, except one which was valued at the sum of $1500, and the 160-acre tract of land, were incumbered for separate amounts. There was a mortgage of $550 against the Buick automobile, funeral expenses in the sum of $1,000, a railroad bonus subscription of $100, which items, together with the incumbrances on the land, constituted an indebtedness of $10,168.53.

October 3, 1927, C. E. Moreman and his deceased wife acquired the northeast corner of block 44 in the Overton addition to the city of Lubbock, described as follows: Beginning at the northeast corner of block 44; thence south 70 feet; thence west 130 feet; thence north 70 feet; thence east 130 feet to the place of beginning.

This constituted the north 70 feet of lots 1 and 2 and the north 30 feet of lot 3 in said block 44, and fronted its entire length, 130 feet, on the south side of Fourteenth street. The consideration therefor was $3,750, paid in cash, and the assumption of an indebtedness for the sum of $2,250 due the Southland Life Insurance Company. This indebtedness was satisfied after the death of Lucy Moreman, with community funds.

On September 25, 1928, C. E. Moreman married his present wife, Lula Belle Moreman.

C. E. Moreman, for himself individually, and as survivor of the first community, joined by his second wife, Lula Belle Moreman, on June 10, 1929, executed to the Southern Mortgage Company their notes aggregating the sum of $3,000, and gave a deed of trust lien to secure the payment thereof on the north 70 feet of lots 1 and 2 in block 44 of said Overton addition.

In the first part of 1930, the exact date not shown, C. E. Moreman, individually and as

survivor of the first community, joined by his second wife, conveyed to W. R. Kelley the last above described tract. The deed was lost, and on October 31st thereafter they, acting in the same capacity, by a substitute deed, conveyed the same property to W. R. Kelley for a consideration of $10 and the assumption by him of the balance due the Southern Mortgage Company.

The city of Lubbock levied an assessment for the sum of $745.91 for paving the north 70 feet of lots 1 and 2 and the north 70 feet of the east 30 feet of lot 3, fronting on Fourteenth street, and, after the paving was completed and accepted, on June 26, 1930, issued its certificate therefor.

Thereafter, on April 23d, W. R. Kelley and wife executed to the Panhandle Construction Company a mechanic's lien on the north 70 feet of said lots 1 and 2 to secure the sum of $575.33, the cost of paving, and on April 28th C. E. Moreman, for himself and as guardian of the estate of his minor son, executed a mechanic's lien to the same company on the north 70 feet of the east 30 feet of lot 3 for the sum of $170.58, the cost of paving.

W. R. Kelley and his wife, Mary Lou Kelley, on November 6, 1930, conveyed their 70 by 100 feet of said lots 1 and 2 to H. L. Roberson, who assumed the payment of the debt due the Southern Mortgage Company and purchased subject to the amount due the Panhandle Construction Company, for paving.

C. E. Moreman and his second wife, on May 14, 1929, acquired a 10-acre tract of land, being a part of section 14 in block (b) in Lubbock county, the consideration for which, and the improvements placed thereon were paid partly with the separate funds of Lula Belle Moreman and partly with the $3,000 they had borrowed from the Southern Mortgage Company. C. E. Moreman, on April 6, 1932, conveyed said 10-acre tract to his second wife for the sum of $500 in cash paid out of her separate funds.

The Interstate Trust & Banking Company acquired the notes and lien given by C. E. Moreman and his second wife to the Southern Mortgage Company on the north 70 feet of lots 1 and 2 in block 44.

The Panhandle Construction Company, plaintiff, because of default, instituted this suit in the district court of Lubbock county on January 20, 1933, against the proper parties, to recover its debt and foreclose its assessment lien against the property covered thereby. The Interstate Trust & Banking Company was made a party defendant, and answered, contesting the priority of plaintiff's paving lien. It also sought, in the event the paving lien was adjudged prior and superior, the foreclosure of its lien and a personal judgment against numerous defendants, including B. W. Moreman, B. F. Cope, and Mrs. B. F. Cope, as sureties on the bond of C. E. Moreman. Their liability is based on the allegations that the survivor had disposed of a large and substantial part of the property belonging to the first community, had failed and refused to account for the value thereof, and failed and refused to pay the debt of such defendant.

The case was tried before the court without the intervention of a jury, and the plaintiff obtained a judgment for $911.29 and a decree adjudging the priority of its lien and a foreclosure thereof. The Interstate Trust & Banking Company obtained a judgment for $2,261.45, a foreclosure of its lien subject to the lien of plaintiff, and a decree for said amount against H. L. Roberson, W. R. Kelley, C. E. Moreman, individually and as administrator, and against B. W. Moreman and B. F. Cope, as sureties on the bond of the survivor. The Court directed the sale of the property, that the proceeds be applied first to the payment of plaintiff's debt, and the balance, if any, credited upon the judgment of the Interstate Trust & Banking Company, and any unpaid balance thereof be made by the levy of execution against the property of H. L. Roberson, W. R. Kelley, C. E. Moreman, individually and as administrator, and also against the property of the sureties on the bond, B. W. Moreman and B. F. Cope.

All of the parties, plaintiff and defendants, accepted the decree of the court except the sureties, who prosecute this appeal.

The appellants contend that the judgment against them as sureties on the bond of C. E. Moreman, survivor, is not warranted, since the testimony shows without dispute that the notes and deed of trust sued on by appellee the Interstate Trust & Banking Company constitute an obligation of the second and not the first community estate.

The testimony is conclusive that the debt of appellee was not created during the connubial partnership of C. E. and Lucy Moreman, nor for the benefit of their community estate. The loan was made subsequent to the death of Lucy Moreman and after C. E. Moreman had been appointed survivor of the first community. He and his second wife, Lula Belle Moreman, obtained the loan, gave a lien on a part of the property of the first

community to secure the payment thereof, and appropriated the money to the use and benefit of the second community.

The statute provides that the survivor shall give bond "conditioned that he will faithfully administer such community estate, and pay over one-half the surplus thereof after the payment of the debts with which the whole of such property is properly chargeable to such person or persons as shall be entitled to receive the same." R. S. art. 3667.

The bond given by C. E. Moreman was in compliance with this statute.

The record shows that Lucy Moreman left surviving her Duke Moreman, aged fourteen, who is the son of herself and C. E. Moreman, and that no legal guardian was ever appointed of his person or estate.

The power of the survivor under the statute to dispose of the community estate has been held many times to carry with it the lesser power to incumber such estate; hence the deed of trust lien held by appellee on property belonging to the first community was valid and sufficient to authorize a foreclosure upon, and a sale of the property covered thereby, in satisfaction of appellee's judgment. However, if a deficiency remains after the sale, appellee cannot have the interest of the child in other property of the community subjected to the payment of such deficiency. The debt is not chargeable against the whole of such community estate under the facts, since the debt is not one to which the statutes give a preference. Such preference is to protect creditors whose debts are created while the connubial partnership exists or incurred for the benefit of such community estate in the management thereof. The bondsmen are liable to such creditors and the heirs for the faithful administration of such estate. They are not liable for the debts made by and for the benefit of a second community. This, as we understand it, is the holding in Faris v. Simpson, 30 Tex. Civ. App. 103, 69 S. W. 1029, 1030, writ denied, in which the court says: "Another contention of appellants is that the debt to Faris was a charge against the entire community estate, and was entitled to priority of payment out of the estate over the claims of the children. Neither is this contention well taken. The debts to which such preference is given are those created during the connubial partnership. Rev. St. arts. 1696, 2229, 2230. The debts incurred by the survivor after qualifying as administrator have no such standing. One who credits a community administrator does so volun-

tarily, and does not thereby acquire an equitable lien against the community property superior to the rights and title of the children."

See, also, McGraw et al. v. Broach (Tex. Civ. App.) 27 S.W.(2d) 250, and authorities therein cited.

The appellee contends that the judgment should be affirmed since the testimony shows the survivor was guilty of such waste and mismanagement as rendered the sureties liable, even though the debt sued on was made by and for the benefit of the second community.

This question we consider it unnecessary to determine, since in our opinion the evidence fails to show devastavit.

The town lots, not involved in this suit, belonging to the first community which were covered by a lien at the time the first wife died, with one exception, were each sold to satisfy the debt secured by the liens against such lots. The 160-acre tract of land which was charged with a lien was exchanged for property in the town of Abernathy, against which there existed a lien, and the equity of the first community acquired in the Abernathy property was consumed in satisfaction of such lien. The exception above mentioned consists of incumbered lots belonging to the first community which were exchanged for an incumbered half section in Terry county. The equity acquired in which, at the time of this trial, belonged to the first community. The lots involved in this suit constituted the homestead of C. E. Moreman and his first wife. After her death, the homestead thereon was abandoned and a house for a home was erected on the only unincumbered lot owned by the first community. The record indicates that such lot and the improvements thereon were lost by virtue of a lien given against the lot to erect such improvements. The Buick automobile against which there was $550 has been disposed of, but a Chevrolet has been since acquired. The bakery which was incumbered for $1,000, according to the inventory, had at the time of the trial a lien against it for $2,300.

The debt and lien foreclosed by the plaintiff was not a voluntary obligation of the survivor because such debt and lien was created by the city. However, had the survivor executed a mechanic's lien to secure the payment of the cost of paving the property, it would not be a devastavit, because in law the presumption is that such improvement enhances the value of the property to the extent thereof. If creating the lien held and

foreclosed by appellee evidences maladministration, the appellee is in no position to avail itself thereof.

In our opinion, the failure of the survivor to protect the equities of the first community in the property against sales under liens created by the first connubial partnership in a period of such financial depression as the country is undergoing is wholly insufficient to show that such estate was so unfaithfully administered as to render the sureties on the bond liable to appellee. There is no testimony that the loss of the equities consequent on such sales were not unavoidable losses. Article 3670, R. C. S.

The record discloses that the appellee has fully developed its case; therefore the personal decree against appellants for any deficiency is reversed and judgment here rendered in their favor. The adjudication of the rights of other parties is not disturbed.